(Lorain County Court of Common Pleas.)

HAYNES v. PEOPLE'S BUILDING, LOAN AND SAVINGS ASSOCIATION

---

*Building Association mortgage—When satisfied.*—A member of a building association who borrows the value of his shares on his certificate of stock, giving a mortgage to secure said loan, where the conditions of said mortgage provide that he shall continue to pay dues, premiums and interest until the association has secured the payment of the full value of each share of the mortgagor, is bound by such condition and mortgage to pay, although in his certificate of stock said association promises to pay the holder thereof the full value of his shares at the end of five years from the date thereof.

(Decided May 27, 1895.)

---

NYE, J.

The case of Joseph H. Haynes et al. v. The People's Building, Loan and Savings Association, is an action brought under the statute for quieting title to certain lots in Lorain, and the petition sets forth the fact that the plaintiffs are the owners of said lots, and that the defendant claims some interest in them, and asks to have the titles to said lots quieted. The answer of The People's Building, Loan and Savings Association sets up the fact that they are a corporation, organized under the laws of the state of New York, and that the plaintiffs became members of said association, and received a certificate for six shares of its stock of the value of $100 each. Upon these shares they borrowed from said association the sum of $600, and gave a mortgage upon said lots, and by the rules of said company were to pay a certain amount in monthly installments, certain interest and premium upon said amount, until such term as will secure to the said The People's Building, Loan and Savings Association the payment of $100 on each and every one of the mortgagor's shares in said association. And it says that it has not received said amount, and title should not be quieted, and for affirmative relief it asks that the mortgage be foreclosed.

The reply of the plaintiff raises an issue upon this, and alleges in substance that the contract or the certificate with The People's Building, Loan and Savings Association was such that it would be paid in five years from the date of the issuing of said certificate, and that they fully paid all assessments, interest and premium for the period of five years, and therefore their mortgage should be cancelled

The proof in this case shows that Joseph H. Haynes made application for the six shares of the stock of said company, which is as follows: "I, Joseph H. Haynes being desirous of obtaining six shares of the People's Building, Loan and Savings Association of Geneva, New York, amounting to $600, I hereby agree to abide by all the terms, conditions and by-laws contained or referred to in the certificate of shares." There is a further

allegation that he appointed E. C. Manter to vote upon said shares for him.    Upon that application a certificate of stock was issued to him.

This application was made on the 29th day of March, 1889, the certificate of stock is dated on the 5th day of April, and is as follows: "This is to certify that Joseph H. Haynes, of Lorain, state of Ohio, is hereby constituted a shareholder in The People's Building, Loan and Savings Association, incorporated under the laws of the state of New York, and holds six shares therein of one hundred dollars each, and in consideration of the entrance fee, together with agreements and full compliance with the terms and conditions printed on the back of this certificate and the articles of association and by-laws adopted by said association, all of which are hereby referred to and made a part of this contract, the said The People's Building, Loan and Savings Association agrees to pay said shareholder or his heirs, executors, administrators or assigns, the sum of $100 for each of said shares, at the end of five years from the date hereof, or, in case of his death before the expiration of said term, then a sum of money equal to the amount of monthly installments paid on said shares, together with all dividends accrued thereon, all of which are payable in the manner and upon the conditions set forth in the articles of association and by-laws and terms and conditions printed on the back of this certificate."

On the back of the certificate are several rules.    The first of which is as follows:

"First—The shareholder or person who is to pay all installments under this certificate, agrees to pay or cause to be paid to the association a monthly installment of one dollar for each share mentioned in the certificate, on or before the last Saturday of each month during the continuance of the certificate."

"Second—The shareholder or person who is to pay all installments under this certificate, agrees to pay, or cause to be paid, to the association, a quarterly installment of twenty-five cents for each share mentioned in the certificate on or before the last Saturday of the third, six, ninth and twelfth months of each current year."

Then follow other provisions with reference to penalties, etc.    And the eighth is as follows:

"Eighth—The articles of association, by-laws, terms and conditions, together with the application, are to be construed together as the contract between the shareholder and the association."

Now, I am of the opinion that when Mr. Haynes made application for and received this certificate, he became a member of and shareholder in said association.    And the association being organized under the laws of the state of New York, he was bound by the laws which govern associations of this kind in the state of New York.

Afterwards, on the 31st day of August, 1889, Mr. Haynes assigned a half interest in this certificate to his wife, Lucy M. Haynes, and by that she became a joint owner with him in this certificate.

It is claimed in argument upon the trial of this case that this certificate is payable absolutely at the end of five years from the time of its date, and that is claimed from this clause of the certificate, "Said The People's Building, Loan and Savings Association agrees to pay said shareholder or his heirs, executors, administrators or assigns the sum of $100.00 for each of said shares, at the end of five years from the date hereof, or, in case of his death before the expiration of said term, then a sum of money equal to the amount of monthly installments paid on his shares," etc.

Now, whatever construction might be put upon this certificate and the laws of the state of New York under which this association was organized, and the by-laws adopted under and by virtue of those laws, I think I am

relieved in part at least from the fact this suit is brought as I have said to quiet the title to this porperty, and the defense set up here is that a mortgage was given by these parties to this association for the payment of $600. The decision of this case must depend largely upon the condition of the mortgage and the bond. The condition in the mortgage is this: "This grant is intended for the security for the sum of $600.00 in the manner following. · That is to say, the sum of six dollars contribution or principal, and two dollars and fifty cents interest, and two dollars and fifty cents premium, each and every month from the date hereof, for such term as will secure to the said The People's Building, Loan and Savings Association, the payment of the full sum of $100.00 on each and every one of the mortgagor's shares hereby secured to be paid; such payment to commence on or before Saturday, September 28, 1889, and to be continued and made on or before the last Saturday of every month thereafter, until the expiration of said term; and also for the payment of all dues, fines and penalties that may be imposed upon the said Joseph H. Haynes and Lucy M. Haynes as members of said association, pursuant to the articles of association and the by-laws thereof, to be paid into the treasury of said association according to the conditions of a bond this day executed and delivered by the said Joseph H. Haynes and Lucy M. Haynes to the said party of the second part, and this conveyance shall be void if such pay-ment be made as herein specified."

A mortgage and bond were given by plaintiffs on the 29th day of September, 1889. The proof and admissions show that Mr. Haynes paid on this certificate a monthly installment of $6.00 on each share from the time of the issuing of the certificate up to the making of the loan, and that from the date of making the loan up to the end of the period of five years from the date of the certificate he paid $1.00 a month on each of these shares, or $6.00 a month on all of them, and he paid $5.00 a month as interest and premium, as stated in the condition in the mortgage; that is, $2.50 interest and $2.50 premium each and every month, making $5.00 for interest and premium per month.

He also paid twenty-five cents a share on each one of these six shares every quarter for the period of five years.

It is said upon the part of the plaintiff that this mortgage ought to be cancelled because there was the agreement between the parties. As I have already said, whatever the agreement may be in the certificate, I do not think that is the agreement of the mortgage. But the agreement of the mortgage is, that they shall continue to make these payments for such term as will secure to said The People's Building, Loan and Savings Asso-ciation the payment of the full sum of $100.00 on each and every one of the mortgagor's shares hereby secured to be paid.

Now, I think this case depends upon the construction placed upon this mortgage, the contract of the parties, and representations made by them. It is said in the first instance that representations were made by the agent, Mr. Manter, that this mortgage would run out and be paid in five years, and that said representations were false. The proof in that re-spect shows that by certain circulars sent out it appeared that this would run about five years, and when Mr. Haynes came to borrow this money he asked Mr. Manter what he thought about this paying out in five years, and Mr. Manter said, "I think it will;" that is substantially all Mr. Manter said about it, and all that was claimed by Mr. Haynes, he said. It was simply Mr. Manter's opinion. There are certain circulars offered in evidence here, and they estimate that it would expire in about five years; one figuring shows it would expire in a little over four years. It is.

claimed on the part of the plaintiffs that they have paid as much as they ought to pay, they having paid in all $671.00. Now, I think when Mr. Haynes went into this association he went into it taking his chances with every other member of the association. It will be noticed that in these payments of $2.50 a month for interest it would amount to $30.00 a year on $600.00, which is just 5 per cent. It will also be noticed that he was paying a premium upon this of 5 per cent, $2.50 a month, which for a year would make $30.00. So that he was in fact paying $6.00 a month on the principal, and was paying $5.00 a month or $60.00 a year interest upon this amount, making 10 per cent., and he might have known when he made this loan he was paying more than the legal rate of interest. I think he went into this association with the understanding that he was to receive large profits because he was paying large premium and large interest, and everybody else was doing the same thing, and it would pay out in about five years. And if it has not done it, it is because the anticipations of the association have not been realized.

Sec. 7 of chap. 569, New York laws of 1875, provides, no holder of redeemed shares shall claim to be exempt upon the ground that by reason of loss or otherwise the association has continued longer than was originally anticipated, whereby the payments of such shares may amount to more than the amount expected.

Another feature of this association was different from some. Mr. Haynes having $600.00 of this stock, and being desirous to make a loan upon that stock, instead of bidding as to the amount of premium he would pay upon this stock and thus get less than $600.00, this company loaned to him the full $600.00, and in return for that, as I have already stated, it was to receive 5 per cent. interest and 5 per cent. premium, making a 10 per cent. loan of it.

Now, the question is made here as to his receiving the amount upon the certificate, according to its terms, and at the end of five years.

I have already said that I will not pass upon that, because a mortgage contract made since then would govern in this particular case. If this company has not made an amount so as to pay all stockholders, and the company was required to go into liquidation, Mr. Haynes might have to pay more upon his mortgage than he would otherwise, and those who hold their certificates might have to receive less upon their certificates to equalize it.

A statement has been prepared here of the amounts paid. The amounts paid by plaintiffs, as shown by the books of the company and offered in evidence, is $366.00 as monthly stock payments, $30.00 as quarterly stock payments that is, twenty-five cents on each share per quarter, $275.00 as interest and premium on loan. Then in another column they have allowed to him in June, 1889, of the first year when he has only made three payments, $6.00 in April, $6.00 in May and $6.00 on the 29th of June. At that time he is allowed ninety cents dividend; the next quarter, when he has paid six payments, he is allowed $1.10; the next quarter, when he has paid nine payments, he is allowed $1.68, and so on to the end, when the books show he is allowed $116.61, and I am unable to see in the absence of proof why these dividends are not fair and reasonable dividends.

It is said there have been losses to this company by reason of the former officers misappropriating money to their own uses, which they had no right to do. The proof upon this subject by Mr. Armitage, present manager of the company, is that after Mr. Haynes made his loan, the old management, instead of paying over in a case like this the full $600.00, deducted 10 per cent., paying over $540.00, taking out $60.00 of the loan

which said officers appropriated to their own use.    It is said by Mr. Armitage, who is called as a witness by the plaintiffs here, that out of these amounts these old officers had gotten away with about fifty-two thousand dollars of this company's money. I am unable to see, in the first place, how that could affect any party who had already borrowed; because if these officers deducted, from the individuals who borrowed, 10 per cent. of the amount of their loan, the individual member would get less, and I am unable to see how the society would lose by it.    It is said by the state officers in New York, that this money should be paid back to the society, and that suits are being prosecuted to recover it back.    But if this is a loss, Mr. Haynes, being a member of the society, must share his proportion of the loss with everybody else.

Parties sometimes go into these associations, thinking they will get their money cheaper than they can of an individual.    I do not know exactly how true that is, but my observation has been that in the end it costs more than it would to go to a bank or individual and borrow the money at the leagl rate of interest.    The only advantage I can see is, they can pay in small payments, and thus keep their savings.    But if they would pay the same amount of money in the bank and let it remain there nutil they got a reasonable amount to pay upon their loan, in my judgment the investment would be better for them than it would be in these associations.    But if Mr. Haynes or any one else sees fit to go in and invest his money in these associations, I think he should be bound by the laws under which these associations are organized, and the by-laws and rules which are adopted by the society.    And with this view of the case, the decision will be in favor of the defendant, and the defendant will have a decree for the foreclosure, for the amount that appears due by the terms of the mortgage.